THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES B. GEITZ, Defendant-Appellant.

Fifth District   No. 5—84—0448

Opinion filed November 25, 1985.

Randy E. Blue and Patricia M. Sarter, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and John H. Benham, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, James B. Geitz, was convicted, after a jury trial, in the circuit court of St. Clair County of deviate sexual assault, aggravated indecent liberties with a child, and home invasion. He was sentenced to 25 years' imprisonment for deviate sexual assault, 25 years for aggravated indecent liberties with a child, and 10 years for home invasion, with all three terms to run concurrently.

On appeal, defendant claims error in (1) the admission of evidence of another offense, (2) the admission of evidence of items found in the trunk of his mother's car, (3) the admission of evidence of acts of defendant which did not tend to prove the crimes charged, (4) the court's exclusion of surrebuttal evidence, and (5) remarks in the prosecutor's closing argument. Defendant also contends he was not proved guilty beyond a reasonable doubt and that the State failed to prove an essential element of the crime of home invasion. We affirm.

The evidence showed that a 14-year-old girl went to a home in Belleville around 7 p.m. on December 1, 1983, to babysit for the couple's three-year-old daughter. While taking care of the child, the babysitter received a phone call from a man who wanted to know if Janet was there. He also asked the babysitter who she was and who else was in the home. The babysitter gave the man this information. She also told the man the parents would be home around 10 p.m.

Later in the evening, while the babysitter was with the child in the child's room sitting on her bed, a man walked into the room. The babysitter testified he wore a white nurse's stocking over his face, that he was six feet tall, weighed 200 pounds and wore dirty green work pants, a gray shirt, a dirty brown jacket and dark cloth gloves. The man asked where Janet was. The babysitter knew of no one in that household named Janet.

The man then told the two girls to face the wall, and he proceeded to walk around inside the house. He came back and told the girls to go into the bathroom. Once in the bathroom, the babysitter turned to look at the man. He had pulled the stocking up to the top of

his forehead, and she was able to view his face for about three seconds before he told her to turn back around. He then gave her a pillowcase and told her to put it over her head. She testified she was still able to see the man through the pillowcase.

The man then ordered the babysitter to take off her clothes. He left the bathroom and went into the kitchen, returning with a plastic measuring cup. He told her to urinate into the cup, and she did so. The intruder took the cup and appeared to drink from it, then forced the babysitter to drink from the cup as well. Next he told her to defecate, but she told him she was unable to do so. The man then ordered her to drink water from the toilet. He next made the babysitter pull down the pants of the three-year-old and lick her anus. Following this, he removed his penis from his pants and told her to put it in her mouth. He ejaculated into her mouth, ordered her to spit the fluid into the cup, and then he appeared to drink it. He ordered the babysitter not to tell anyone what had happened or he would "beat you up," then left the house.

The babysitter positively identified defendant at trial as the attacker. A police officer testified the babysitter was able to pick defendant's picture out of a photographic lineup.

The State's evidence also showed that defendant, after being arrested, was at the Belleville police station on December 12, 1983. He tried to escape from police custody and was shot three times.

Defendant testified at the trial and denied being the attacker. He stated he was at home with his parents at the time the attack took place. Regarding his escape attempt, he testified he was afraid of the police officers because he thought they would do anything to make him confess, so he ran.

Defendant's mother testified that her son arrived home around 8:30 p.m. on December 1, 1983, and did not leave the house again that night. She also stated he did not own green work pants or a brown cloth jacket.

Defendant first claims the court erroneously admitted evidence of an offense allegedly committed by defendant in Ferguson, Missouri. A woman testified at trial in the present case that a man entered her home in the early morning hours of July 19, 1983. She testified the man told her he wanted to perform an act of cunnilingus upon her. She offered instead to perform fellatio upon him and he agreed. After the act of oral sex, the man ordered the woman to lick his anus. He then began masterbating, put his penis into the woman's mouth and ejaculated. The man also asked for money. At the trial in the case *sub judice*, the woman identified defendant in court as her attacker, and

also testified she had identified him in a lineup.

Defendant has a two-prong attack against this evidence. First he claims the lineup procedure used in the Ferguson incident was suggestive, and that the Ferguson woman's identification of defendant was not reliable. Even if an identification is made under suggestive conditions, the identification is admissible if reliable. (*People v. Bryant* (1983), 94 Ill. 2d 514, 520, 447 N.E.2d 301, 304.) Without deciding if the lineup was suggestive, the evidence here shows the woman's identification was reliable under the factors set forth in *Bryant*. 94 Ill. 2d 514, 520-21, 447 N.E.2d 301, 304.

■ Defendant also argues there was no showing of similarity between the Belleville and Ferguson offenses to establish *modus operandi*. "[T]he general rule is that evidence of other crimes is not admissible if it is relevant merely to establish the defendant's propensity to commit crime." (*People v. Stewart* (1984), 105 Ill. 2d 22, 61, 473 N.E.2d 840, 859.) Such evidence is admissible if relevant for other reasons, and proving *modus operandi* is one of those reasons. (105 Ill. 2d 22, 61, 473 N.E.2d 840, 860.) For evidence of another crime to be probative with regard to *modus operandi*, "there must be a strong and persuasive showing of similarity of the offenses and the evidence must show that both crimes were 'so nearly identical in method as to earmark them as the handiwork of the accused.'" (*People v. Byas* (1983), 117 Ill. App. 3d 979, 987, 453 N.E.2d 1141, 1145-46.) There must be some distinctive features that are not common to most offenses of the type being considered. *People v. Barbour* (1982), 106 Ill. App. 3d 993, 1000, 436 N.E.2d 667, 672.

The State has listed what it considers the similarities between the two offenses. The State points out, among other similarities, that the attacker in both cases wore dark colored cloth gloves, was fascinated with oral-anal activity, and ejaculated into the mouth of the victim. The attacker in both cases asked about a person's name when no one by that name was present. The State also notes both attacks came at night and at residences.

■ We find these similarities common to many sexual attacks. We cannot find the crimes were so nearly identical as to earmark them as the handiwork of defendant. (*People v. Byas* (1983), 117 Ill. App. 3d 979, 987, 453 N.E.2d 1141, 1145-46.) Thus, we must consider whether admission of the evidence constitutes reversible error.

■ Where erroneously admitted evidence does not prove any element of the crime not established by other properly admitted evidence, then the error in admitting such evidence does not contribute to the finding of guilt and is harmless. (*People v. Bacon* (1980), 91 Ill.

App. 3d 673, 681, 415 N.E.2d 678, 684.) Here, there was properly admitted evidence to prove every element of the crimes charged. Defendant did not suffer such substantial prejudice as to warrant reversal of his convictions. See *People v. Perruquet* (1983), 118 Ill. App. 3d 339, 343, 454 N.E.2d 1051, 1054.

■ Defendant next contends the court erred in denying his motion to suppress evidence of items found in the trunk of his mother's car. After defendant was arrested, the car he had been using that day, which belonged to his mother, was searched. Police found a brown leather jacket, a gray sweatshirt with dark cloth gloves and a pair of women's pantyhose inside the pockets, a pair of blue jeans with a dirty white rag tied in a knot in one of the pockets, a pair of blue and white running shoes, and a green plastic measuring cup. Defendant filed a motion *in limine* arguing all of these items except the gloves were inadmissible because they were not connected to the crimes. The trial court ruled testimony regarding all of the items was admissible. Defendant argues the evidence is irrelevant because the babysitter was unable to identify any of the items in the trunk other than the gloves as being even similar to the type used by her attacker.

We deal first with the sweatshirt, blue jeans and the running shoes. There was testimony that defendant had been seen wearing blue jeans, a sweatshirt and tennis shoes earlier on the day these crimes occurred. Thus, to the extent the clothes found in the trunk were different from the babysitter's description of what defendant was wearing during the attack, the presence of these items in defendant's possession would be relevant to show defendant could have changed clothes between the time he was seen earlier in the day and the time he was seen by the babysitter. If not relevant for that purpose, the presence of the clothes in the trunk would be a neutral fact. We cannot see how defendant could be prejudiced by admission of evidence of the presence of these clothes. The same is true for the rag. Although perhaps not relevant for any purpose, we cannot see how defendant was prejudiced by evidence there was a rag present in the trunk of the car.

■■ We turn then to the measuring cup and the pantyhose. The babysitter could not identify these items as being those used by defendant during the attack. There was no indication the cup found could not have been the one used. However, at trial defense counsel indicated in a bench conference the pantyhose found in the trunk were of a different color than those described by the babysitter. Defendant argues that the jury was allowed to speculate these items were the ones used. He also claims the jury may have used this evi-

dence to infer defendant had the propensity to commit crimes similar to the crimes charged here.

The State cites the rule that "[p]hysical evidence may be introduced where there is proof to connect the evidence to defendant and the crime. [Citation.] Admissibility does not require a showing that the evidence was actually used in the offense charged as long as it is shown that the object is at least suitable for the commission of the crime." *People v. Perry* (1980), 81 Ill. App. 3d 422, 429, 401 N.E.2d 1263, 1269, *cert. denied*, (1981), 451 U.S. 983, 68 L. Ed. 2d 839, 101 S. Ct. 2313.

Numerous cases have dealt with evidence of a weapon found in a defendant's possession, where the weapon is not shown to be the one used in the crime. In *People v. McQueen* (1983), 115 Ill. App. 3d 833, 839, 450 N.E.2d 921, 926, the court observed that "[w]here direct evidence shows that the weapon found in a defendant's possession was not used in the commission of the offense, normally, it may not be admitted into evidence." Another court has found that "[t]here is some inconsistency in the authorities as to whether the suitability of the weapon in the commission of the offense may be shown when the prosecution concedes that the particular weapon was not used in the crime." (*People v. Brown* (1981), 100 Ill. App. 3d 57, 69, 426 N.E.2d 575, 582.) Even assuming these items were not used in the crimes charged, and thus the evidence should not have been admitted, we find any error to be harmless. We find this evidence could not have reasonably affected the verdict, and that its admission was harmless in light of the eyewitness testimony. *People v. Crotty* (1976), 44 Ill. App. 3d 413, 419-20, 357 N.E.2d 1360, 1365.

■ Next, defendant claims he was prejudiced by the admission of testimony of the babysitter that she was forced to drink urine, forced to drink water from the toilet, was told to defecate, and that defendant drank urine and seminal fluid. Defendant claims this evidence was irrelevant and immaterial.

Defendant did not object at trial to this evidence, and did not include this issue in his post-trial motion. Thus, his contentions are waived on appeal. (*People v. Franklin* (1985), 130 Ill. App. 3d 514, 522-23, 474 N.E.2d 776, 782.) We have studied defendant's argument and do not find plain error. The evidence of what defendant forced the babysitter to do was relevant for at least two reasons. First, these acts were so intimately interwoven with the other occurrences they were admissible as part of the *res gestae*. (*People v. Damen* (1963), 28 Ill. 2d 464, 468, 193 N.E.2d 25.) Second, these acts were relevant to show the babysitter was not consenting to defendant's acts but was

under the control of defendant due to her fear of him. Defendant was found guilty of aggravated indecent liberties with a child under the theory of accountability under section 5—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 5—2), and the evidence of defendant's control over the babysitter was highly relevant. Also, as discussed below, these acts were also relevant to show injury for purposes of the home invasion statute. The actions of defendant in drinking the urine and seminal material were also interwoven with his other actions so as to be part of the *res gestae*. We find no reversible error in the admission of this evidence.

■ Defendant next argues he was denied his right to a fair trial when the court refused to allow him to present evidence in surrebuttal. Defendant testified that after being shot in his escape attempt, he did not remember going to the hospital or speaking to anyone there. He specifically stated he did not remember seeing or speaking to his mother at the hospital. In rebuttal, the State presented evidence, through the testimony of a police officer, that defendant made the following statement to his mother at the hospital: "I ran away from them and they did this to me. I told them I was with you all the times for an alibi. I was with you all the times."

Defense counsel then attempted to recall defendant in surrebuttal for the purpose of testifying as to his physical condition at the time the statement was made at the hospital. The court sustained the State's objection to the surrebuttal.

> "Rebuttal evidence is that which is produced to explain, repel, contradict, or disprove the evidence of the defendant [citation] and may be admitted even if such evidence would have been admissible as part of the State's case in chief [citations].

> Surrebuttal evidence is permitted to be introduced by defendant to refute or oppose new matters interjected into the trial by the State on rebuttal." *People v. Cannon* (1978), 62 Ill. App. 3d 556, 560, 378 N.E.2d 1339, 1343.

The court in *Cannon* also cited the rule that the purpose of surrebuttal is not the introduction of evidence merely cumulative to that presented by the defendant in his case in chief. *People v. Cannon* (1978), 62 Ill. App. 3d 556, 561, 378 N.E.2d 1339, 1343, quoting *Ross v. Danter Associates, Inc.* (1968), 102 Ill. App. 2d 354, 367, 242 N.E.2d 330, 336.

■ Here, the only evidence defendant offered in surrebuttal was his physical condition while at the hospital shortly after being shot. He had already testified he did not remember much about that period and specifically did not remember seeing or speaking to his mother.

His mother had testified defendant looked like he was "in a lot of pain." A police officer had also testified defendant appeared to be in pain. In these circumstances, the trial court did not abuse its discretion in refusing to admit the evidence offered in surrebuttal, for it would have been cumulative. After having already told the jury he did not remember speaking to his mother at the hospital, defendant's offered testimony about his physical condition would have added nothing to his defense. There was no prejudice from exclusion of the surrebuttal evidence.

Defendant's fifth contention points to remarks by the prosecutor in closing argument, alleging these remarks impermissibly shifted the burden of proof. Defendant has not included this issue in his post-trial motion, so he has waived it. *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857.

Defendant also contends he was not proved guilty beyond a reasonable doubt. He argues the circumstances under which the babysitter viewed the intruder presented a great opportunity for mistake and misidentification. We find there was sufficient opportunity here for the babysitter to observe defendant. Her brief clear view of his face came at close range. The babysitter also testified she could see through the pillowcase that was later placed over her head, and could still observe defendant's facial features. Finally, her identification of defendant at trial was unequivocal. Her identification was of sufficient reliability to prove defendant guilty beyond a reasonable doubt.

Defendant's final contention is that the State failed to prove an essential element of the crime of home invasion. Specifically, defendant states there was no evidence of any "injury" to the victim as required by section 12—11(a)(2) of the Criminal Code of 1961, which states:

> "A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and *** [i]ntentionally causes any injury to any person or persons within such dwelling place." Ill. Rev. Stat. 1983, ch. 38, par. 12—11(a)(2).

It has been noted recently that the "question of what constitutes 'any injury' for purposes of the home invasion statute has not been directly considered by our reviewing courts." (*People v. Rachel* (1984), 123 Ill. App. 3d 600, 603, 462 N.E.2d 959, 962.) Nevertheless, the court in *Rachel* did note *People v. Bitner* (1980), 89 Ill. App. 3d 1106, 1112, 412 N.E.2d 721, 726-27, which is relied upon by defendant for

the holding that "injury" within the context of the home invasion statute means "bodily harm." However, the court in *Rachel* explained that evidence of visible injury to the victim is not required to support a conviction for home invasion. (*People v. Rachel* (1984), 123 Ill. App. 3d 600, 604, 462 N.E.2d 959, 963.) In *Rachel*, the only evidence of injury was that defendant held a pillow over a child's face preventing her from breathing properly. The court held this constituted injury under the home invasion statute and "the lack of visible evidence of injury does not negate injury to her." 123 Ill. App. 3d 600, 604, 462 N.E.2d 959, 963.

Similarly, in *People v. Foster* (1982), 103 Ill. App. 3d 372, 377, 431 N.E.2d 430, 435, the only evidence of injury was that defendant pushed the victim down into a chair with his hand around her throat while she struggled with him. The court held that "[c]learly this contact caused injury; thus, it was sufficient to sustain the defendant's conviction under the home invasion statute." Likewise, in *People v. Shelby* (1984), 123 Ill. App. 3d 153, 163, 462 N.E.2d 761, 768, the only evidence of injury was that defendant got in bed behind the victim, placed his hand over her mouth causing her to swing, kick, and to scream in an effort to remove his hand. Defendant was swinging at the victim and trying to grab her hands. The court held "the jury could infer that complainant suffered physical pain during her struggle and thereby suffered the requisite injury" for home invasion. 123 Ill. App. 3d 153, 163, 462 N.E.2d 761, 768.

Here the evidence showed the babysitter was forced to pull a pillowcase over her head. She was forced to urinate, then to drink her own urine. She was told to defecate but could not. She was made to drink water from the toilet. Defendant forced her to lick the anus of a three-year-old child. Defendant placed his penis into her mouth and ejaculated. We find sufficient evidence of injury to the babysitter. For that reason, we do not address the State's argument that psychological trauma can be the injury under the home invasion statute.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

JONES, P.J., and WELCH, J., concur.