**Larry SIZEMORE, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 16S00–8704–CR–386.

Supreme Court of Indiana.

Nov. 30, 1988.

William E. Marsh, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Larry Sizemore was convicted in the Decatur County Circuit Court on November 18, 1986 of Rape, a class B felony and was sentenced to fifteen (15) years. He directly appeals raising the following issues for our review:

1. whether the trial court erred in admitting evidence of a prior rape by Sizemore to establish identity, and

2. whether the trial court erred in admitting evidence of the victim's pre-trial voice identification of Sizemore.

The facts most favorable to the verdict below show that M.P., the victim, returned home from work in the early morning hours of August 24, 1986. She undressed and went to bed. She was awakened by a man standing over her and was unable to clearly observe his face in her dark room. The man was naked. M.P. tried to get up but the man jumped on top of her and then attempted to tie her wrists together. She resisted and begged him not to tie her up. She continued to talk with the intruder who refused her offer of money. He told her he wanted to make love to her and that she was beautiful. The man then raped M.P. She continued to ask him questions about himself since she believed that he might not harm her if she treated him in a friendly manner. Finally the man dressed and left. Strips of toweling which the man had used in an attempt to bind M.P.'s wrists were left hanging on the bed backboard.

M.P. was interviewed by Captain Clark, a Greensburg Police Detective. She selected several photographs of men based on some of the features she remembered about her assailant. A photograph of Appellant Sizemore was included in those she chose. Clark asked M.P. to listen to a tape recording. M.P. identified the man's voice on the tape recording as that of the man who had raped her. M.P. did not know that the man whose photograph and voice she had identified were those of Sizemore. M.P. had met Sizemore briefly about a week earlier while he was with her daughter.

D.J. lived across the street from Sizemore and was acquainted with him. She had conversed with him on occasion when she approached him on the street. On April 4, 1986, D.J. left her house to drive to her fiance's home. Sizemore saw her and commented on her attractive appearance. D.J. returned home that evening about 11 p.m. and went to sleep. She had a habit of sleepwalking. That night she awoke standing in her bedroom. She then observed a naked man with a mask over his face lying on her bed. He held his penis in his hand. D.J. walked over to the man and tried to remove his mask. She was thrown onto the bed. He tied her wrists behind her back with strips of toweling and then raped her. D.J. screamed during the confrontation but became silent after the man threatened her by placing a knife at her throat. When the rape was completed the man arose and began dressing in the hallway. He apologized to her telling her he was sorry it happened. D.J. was interviewed

by Detective Clark after the incident. The next morning she told Clark that she believed Sizemore was the man who had raped her. D.J. called Sizemore on the telephone and discussed what had happened. Clark tape recorded the conversation. Immediately, D.J. indicated that she recognized Sizemore's voice as that of her assailant.

## I

■ Sizemore argues the trial court erred by allowing D.J.'s testimony concerning how she was raped by Sizemore on April 6, 1986 in her apartment. The trial court, after hearing D.J.'s testimony outside the presence of the jury, ruled that the evidence was admissible to establish Sizemore's identity in the rape of M.P. on August 23, 1986.

Evidence of other crimes is not admissible as proof that the defendant committed the crime charged. *Penley v. State* (1987), Ind., 506 N.E.2d 806, 808–09; *Malone v. State* (1982), Ind., 441 N.E.2d 1339, 1345. An exception to this rule provides the State may attempt to prove the identity of the perpetrator of the offense being tried by showing that an uncharged crime in which the defendant has been identified and the charged crime were committed with identical *modus operandi*. *Penley*, 506 N.E.2d at 808–09. The acts or methods employed must be so similar, unusual, and distinctive as to earmark them as the signature of the accused. *Id.* at 809.

Here, the record reveals several similarities in the rapes of D.J. and M.P. Sizemore was acquainted with each victim. The rapes occurred late at night in the women's bedrooms. The perpetrator gained an illegal entry into each woman's home and removed all of his clothes before each woman was awakened. The rapist had prepared bonds by cutting a towel into strips. The towel strips were then employed to bind the women's hands. The rapist talked with both victims during the duration of the rape although the conversation varied in degree. Variations also exist. The attacker wore a mask during the rape of D.J., but no facial covering was used by

M.P.'s assailant. The rapist drew a knife on D.J. but did not with M.P. Sizemore notes other differences which may be attributed to the women's responses to the intruder's acts of aggression.

Sizemore's signature was present in both rapes in the form of the carefully prepared strips of towel which he used in an attempt to tie up his victims. Had other materials been employed, the inference of one man's handiwork may not have appeared so clearly. However, the fact that strips of towel were present in each crime strongly suggests that one man committed both crimes. Significantly, both women had been observed by Sizemore. He found them to be beautiful and knew they lived alone. The similarities discovered in the rapes of M.P. and D.J. permitted a conclusion that the *modus operandi* present reflected that one man committed both crimes. *See Williams v. State* (1981), 275 Ind. 434, 440, 417 N.E. 2d 328, 332; *Willis v. State* (1978), 268 Ind. 269, 272–73, 374 N.E.2d 520, 523. These shared features support the trial court's ruling that D.J.'s testimony was admissible for the limited purpose of proving Sizemore's identity in the rape of M.P. The trial court did not err in permitting D.J.'s testimony.

## II

Sizemore contends that the trial court erred by allowing evidence of M.P.'s pre-trial voice identification made on the basis of M.P.'s listening to a tape recording of Sizemore's voice. The tape recording was obtained when D.J. telephoned Sizemore to talk to him about his prior rape of her. Sizemore argues that the procedure employed by Detective Clark in the pre-trial identification was so unnecessarily suggestive that it irreparably tainted any in-court identification of him by M.P. and amounts to a due process violation.

■ The record does not reflect that this argument was presented to the trial court during trial or in Sizemore's motion to correct errors. The argument presented to the trial court challenged the legality of the creation of the tape recording and characterized the taping of the telephone conver-

sation between D.J. and Sizemore as an illegal seizure of evidence under the Fourth Amendment. There is no objection to the admissibility of M.P.'s out-of-court voice identification made on the basis that the procedure employed by Detective Clark was unnecessarily suggestive since he failed to provide M.P. with tapes of other men's voices. Because Sizemore presents this argument for the first time on appeal, the issue is waived. *See Clark v. State* (1986), Ind., 498 N.E.2d 918, 922.

 Further, Sizemore objected to the voice identification of M.P. during Detective Clark's testimony. However, when M.P. testified about her identification of his voice on the tape recording, the record shows no objection. Reversal may not be predicated on the erroneous admission of evidence when evidence of the same probative effect is admitted without objection. *Boyd v. State* (1986), Ind., 494 N.E.2d 284, 299, *cert. denied* (1987), 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860; *Wallace v. State* (1985), Ind., 486 N.E.2d 445, 461, *cert. denied* (1986), 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723. Sizemore fails to establish he was prejudiced by the admission of Detective Clark's testimony because he failed to object to the same evidence at the time M.P. disclosed her pre-trial identification of Sizemore's voice before the jury.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER, J., concurs with separate opinion in which DICKSON, J., concurs.

DICKSON, J., concurs in result without separate opinion.

DeBRULER, Justice, concurring.

It is now basic that the federal due process clause prohibits the government from staging a one-on-one confrontation between suspect and victim, or showing a victim a single photograph of a suspect. Such a procedure is unnecessarily suggestive and conducive to irreparable mistaken identification of the perpetrator. *Zion v. State (1977)*, 266 Ind. 563, 365 N.E.2d 766. Fair identification procedures involve displaying to the victim a group of individuals or photographs in which the suspect is included whenever possible. The main constitutional principle established by the case of *Chambers v. State* (1981), Ind., 422 N.E.2d 1198, is that the same due process standards apply to pre-trial voice identification procedures. When presenting the recording of a suspect's voice to the victim, the police should include it in a voice array, for the failure to do so may be unduly suggestive of the suspect's guilt. I do however agree that the issue was not raised at the trial level, and is thus not presented for resolution in this case.

DICKSON, J., concurs.