**Gregory L. GOOTEE, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 25A03–9106–CR–157.**

Court of Appeals of Indiana, Third District.

March 25, 1992.

Transfer Denied May 14, 1992.

Jerald W. Yeager, Refior Law Office, Warsaw, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

GARRARD, Judge.

A jury found Gregory L. Gootee guilty of false reporting[1], a Class D felony. The facts establish that on December 20, 1989 at approximately 1:24 a.m. a telephone call was received by Woodlawn Hospital in Rochester, Indiana. The unidentified caller stated, "Ma'am there is a bomb set in your building to go off at 2:30 just to teach all your nurses." Gootee was on duty that night in the hospital's emergency room area in his capacity as an Emergency Medical Technician (EMT). There are usually three EMT's on duty in the Emergency Room (ER) area. They generally locate themselves in a dispatch room near the ER when they are not otherwise attending to their patient care and ambulance responsibilities. Neither Gootee nor one of the other EMT's was in the dispatch room when the call came in. Gootee had gone to the cafeteria. Near the entrance to the cafeteria area is an elevator and on the same hall is a public phone. Near the elevator Gootee had a short conversation with a Ms. Crispen before she entered the elevator. Ms. Crispen could remember talking to an EMT, but could not say whether that person was Gootee. She did testify that her dreaming of the incident enhanced her belief that an EMT, not necessarily the one she spoke with, was on the phone. When Gootee returned to the dispatch room he was informed that there had been a caller who stated that a bomb had been placed in the building and that it was necessary to evacuate the building. Gootee assisted in the evacuation proceeding as instructed. The hospital's thirty-two patients were evacuated and a bomb dog was sent in; no bomb was found. The entire procedure took roughly an hour and a half and fortunately, all were returned to the hospital unharmed.

On February 16, 1990 the state filed an information for false reporting and attached a probable cause affidavit. The trial court found no probable cause existed for the issuance of an arrest warrant on February 20, 1990. Gootee voluntarily appeared for an initial hearing on the 26th of February and was released without bail.

On April 25, 1990 Gootee requested, by written motion, that documents concerning his prior conviction for arson in Marshall County not be allowed into evidence against him in the instant case[2]. After conducting a hearing and accepting briefs on the issue the trial court took the matter under advisement. On May 17, 1990 the trial court granted Gootee's motion. The issue, as the trial court defined it, was whether the state ought to be able to admit into evidence a transcript of Gootee's statements made prior to the arson conviction in which he explained the basis of his actions which led to that conviction. The trial court did not accept the state's arguments, noting that "intent, motive or purpose may in fact be reflected by the evidence, [but] it [was] obvious that the purpose of the offer[3] is to show the parallel between the motive in the Marshall County case and the motive in the Fulton County case and to therefore establish the defendant's identity in the Fulton County case." Record at 52.

The state filed a motion for further argument on May 30, 1990. The trial court granted the motion and heard additional argument. On July 11, 1990 the trial court set aside its earlier ruling on Gootee's mo-

---

1. Indiana Code section 35–44–2–2, which reads in pertinent part:

    (b) A person who reports, by telephone . . ., that
      (1) the person or another person has placed or intends to place an explosive . . . in a building . . .;
    knowing the report to be false commits false reporting, a Class D felony.

2. Gootee labeled his motion a Motion To Suppress. The trial court properly noted that the motion was more properly a Motion in Limine and conducted the hearing accordingly.

3. The state's offer concerned the transcribed statement of Gootee dated October 26, 1987. Gootee was then an in-training volunteer fireman. He explained that by starting some of the fires he could respond to the calls, so that he could receive more training in fire-fighting.

tion in limine. In doing so the trial court found the "parallels reflected within the two circumstances ... so strong and the method so clearly unique that the probability of the same perpetrator being involved in the two circumstances more than outweighs any dangers of jury misuse of the information of prior misconduct." The trial court reasoned that uniqueness of the motive as part of the identity proof in the case was a supporting basis for the evidence's admissibility. Gootee's motion for additional argument was denied on November 28, 1990. Thereafter, trial was held and Gootee was convicted.

His appeal challenges the propriety of admitting the evidence concerning his prior arson convictions, the sufficiency of the evidence, and whether he was denied the effective assistance of counsel.

I. Was it error for the trial court to allow the state to admit evidence concerning Gootee's prior conviction for arson?

The state asserts that Gootee's statements made during the investigation that led to his prior conviction for arson were admissible as relevant to establish both identity *and* motive of the perpetrator of the phoned-in bomb threat that occurred on the night in question. Its argument fails to consider final Instruction No. 14 wherein the trial court instructed the jury that evidence concerning Gootee's prior conviction had "been received solely on the issue of [Gootee's] identification as the alleged perpetrator here" and that "this evidence [was] to be considered by [them] only for the limited purposes for which it was offered." Record at 131.

In *Penley v. State* (1987) Ind., 506 N.E.2d 806, 808, the court stated that exceptions to the rule requiring the exclusion of evidence of other crimes must be applied with caution. Our decisions have recognized two branches of the so-called "common scheme or plan" exception. *Id.* at 809; *Gibbs v. State* (1989), Ind., 538 N.E.2d 937, 939. One branch allows admission of evidence of extrinsic offenses to prove intent, motive, purpose, *or* identity. The other branch permits the admission of evidence bearing upon extrinsic offenses as evidence of a preconceived plan that includes the charged crime.

Evidence of extrinsic offenses can be admitted under the "common scheme or plan" exception to prove intent, motive, purpose, or identity when it is demonstrated that the defendant committed the extrinsic offense with a similar *modus operandi.* The terms have been used in a fashion that has not always been helpful in differentiating the exceptions. We do, however, recognize that there must be a greater degree of similarity between the extrinsic offense(s) and the charged offense when the evidence is introduced to prove identity. Before such evidence can be admitted upon the issue of identity it must be established that "the similarities between the two crimes are so strong and the method so unique that it is highly probable that the perpetrator of both is the same person." *Penley,* 506 N.E.2d at 809. What is required is a strong demonstration that the similarities constitute the accused's signature. *Id.* "The repeated commission of similar crimes is not enough to qualify for the exception['s] ..." use to establish identity. *Id.* When the evidence is offered on the issue of identity, *modus operandi* essentially means the accused's signature.

The heightened degree of similarity is required to assure the proper use of extrinsic offense evidence by the fact finder on the issue of identity. Proof of identity, in the context of this discussion, allows the fact finder to find that this defendant committed the charged crime *because he committed the extrinsic crime.* Without the safeguards provided by the requirement of demonstrating signature-type similarity, the dangers of misuse by the fact finder may be too great to permit confidence in the fact finder's result.

Having said all this we must address the state's contention that any error in the admission of the evidence has been waived because Gootee voiced no objection when the evidence was offered during the trial. Relying on *Lockridge v. State* (1975) 263 Ind. 678, 338 N.E.2d 275, Gootee ar-

gues that his objection during the proceedings on the motion *in limine* was sufficiently clear that he should be excused from the operation of the contemporaneous objection rule. In *Pointon v. State* (1978) 267 Ind. 624, 372 N.E.2d 1159, 1161, our supreme court expressly disapproved of that aspect of *Lockridge.* Moreover, it has never been the rule for motions *in limine.* We conclude the error was waived for failure to make a proper and timely objection at trial.

## II. Sufficiency of the evidence.

In the case at bar, the state contends that the similarity between the events surrounding Gootee's prior arson conviction and those pertaining to the false reporting charge are sufficient to allow the verdict to stand. With this we cannot agree. The facts of the two crimes are not similar, unusual, and distinctive enough to be able to say that it is highly probable that the perpetrator of both is the same person.

Gootee's prior statement contained his explanation of why he set the fires for which he was charged with arson. There were four fires addressed by his statement. He explained the first was set so that he might get some additional training as a fireman. The second fire he thought would go out. The third is unexplained. Finally, the fourth was a mattress fire in his own bedroom which he stated he did not intend to start. Gootee made no telephone calls to report those fires. The state argues that Gootee's motive to get additional training fighting fires is so unique and distinctive as to amount to Gootee's signature. That particular motive, by our reading of the statement, cannot even be said to run to the four fires discussed. The state's reliance on the case of *Witte v. State* is misplaced. In that case testimony concerning a prior conspiracy was admitted to prove "common scheme and plan." In *Witte* identity of the perpetrator was not in issue. *Witte v. State* (1990), Ind. 550 N.E.2d 68, 72 (DeBruler, J., dissenting).

Under the identity-*modus operandi* prong of the "common scheme or plan"

exception it is the defendant's methodology in carrying out the crime that concerns us. "Not only must the methodology of the two offenses be strikingly similar, but the method must be unique in ways which attribute the crimes to one person." *Penley,* 506 N.E.2d at 810. Our examination of the statement concerning the four fires that Gootee started fails to demonstrate any similarity that would establish Gootee's signature as to those crimes. They appear to resemble most other arsons. Each was started in a different manner and under different circumstances. Only the first was explained by Gootee to have been set to further his training. The case at bar lacks the degree of similarity to the prior extrinsic offenses required to make out the signature of Gootee. The logic necessary to sustain the conviction on the basis of the prior offenses is that because Gootee set a fire to secure additional training as a fireman, he must have been the person to telephone a false bomb threat because he was one of the people involved in evacuating the patients from the building. While his prior conduct might raise the possibility that he was the guilty party, it was far from a signature for the offense demonstrating the probability that he was the perpetrator.

The state was required to prove beyond a reasonable doubt that Gootee was the perpetrator of the charged crime. Apart from the evidence concerning Gootee's prior convictions, the only evidence supporting the verdict was the fact that Gootee was on duty that night and was not in the EMT area when the call came in; that witness Crispen had been in the hospital that night and had seen and talked to an EMT whom she could not identify as Gootee, but who was similar in appearance, and that as the result of her dreams her memory had improved and she recalled seeing an EMT using the telephone in the hallway; and witness Frasa who testified that about three weeks before the incident Gootee had said, "Wouldn't it be neat to have a bomb threat with evacuating the patients and paging in people to the hospital," but that he had then started laughing and said that he would not do that and she believed he

was joking and did not report the conversation to anyone.

While we will not reweigh the evidence, proof beyond a reasonable doubt is made of sterner stuff than this. The state's case presented no more than conjecture that Gootee was the caller. As such, it was insufficient and Gootee is entitled to discharge.

Reversed and remanded with instructions to discharge the defendant.

HOFFMAN, P.J., and STATON, J. concur.