**John W. MOORE, Appellant/Defendant,**

**v.**

**STATE of Indiana, Appellee/Plaintiff.**

No. 64A04–8912–CR–00592 [1].

Court of Appeals of Indiana,
Fifth District.

April 10, 1991.

---

**1.** This case was reassigned to this office on January 2, 1991.

James V. Tsoutsouris, Porter County Public Defender by Roy G. Moutaw, Deputy Public Defender, Portage, for appellant/defendant.

Linley E. Pearson, Atty. Gen. of Indiana, Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee/plaintiff.

BARTEAU, Judge.

John W. Moore appeals after a jury convicted him of two counts of rape[2] and two counts of criminal deviate conduct,[3] all four counts as Class A felonies; one count of criminal confinement[4] and one count of attempted criminal confinement,[5] both as Class B felonies. On each of the four Class A offenses, the trial judge enhanced the presumptive thirty-year sentence[6] to forty-five years and ordered the sentences run consecutively, for a total of 180 years. Both of the Class B offenses were enhanced from the presumptive ten-year sentence[7] to seventeen years, and run concurrent to each other and concurrent to the Class A consecutive sentences.

Eight issues are presented:

(1) Was it error to admit evidence that Moore had committed another rape not charged in this trial?

(2) Was the sentence manifestly unreasonable and did the trial court adequately explain its departure from the presumptive sentences?

(3) Was it error to admit the testimony of a police investigator through deposition?

(4) Was it error to admit exhibits that the defense did not see before trial despite a mutual discovery order?

(5) Was it error to deny Moore's motion for directed verdict on the charge of attempted criminal confinement?

(6) Was Moore denied effective assistance of counsel?

(7) Was the evidence sufficient on each count?

(8) Was it error to keep the jury on duty for seventeen hours?

We affirm.

### FACTS

Moore abducted seventeen-year-old M.B. at knifepoint from the parking lot of a convenience store in the early morning hours of April 10, 1988. He forced her into his car and drove to one secluded area and then a second, compelling her into anal intercourse and fellatio at the first stop, and raping her at both. Those events were the basis for all the charges except attempted criminal confinement.

Moments before abducting M.B., Moore had run at Jeannine Ullom, who was in a car parked at the same store. Ullom saw Moore approaching, armed with a knife, and locked her car door in the instant before he grabbed the outside door handle. As Ullom drove away, Moore struck the driver's side window with his knife, chipping the glass. The charge of attempted criminal confinement reflects that conduct.

2. Ind.Code 35–42–4–1.

3. I.C. 35–42–4–2.

4. I.C. 35–42–3–3.

5. I.C. 35–42–3–3 and 35–41–5–1(a).

6. I.C. 35–50–2–4.

7. I.C. 35–50–2–5.

The defense was mistaken identity and alibi. Further facts are supplied where necessary.

## EXTRINSIC OFFENSE

(1) Was it error to admit evidence that Moore had committed another rape not charged in this trial?

■ D.H. testified that Moore had raped her five months before M.B. was raped. Generally, such extrinsic offense evidence is inadmissible; however, where the commission of a crime is undisputed but the identity of the perpetrator is at issue, such evidence is admissible if the charged crime and the extrinsic one are "so strikingly similar that one can say with reasonable certainty that one and the same person" committed both. *Penley v. State* (1987), Ind., 506 N.E.2d 806, 810.

■ The parties have ably mustered the facts for and against a holding of striking similarity. According to the State, both M.B. and D.H. were attacked in or near the same shopping mall. In each case, the rapist used a knife; repeatedly struck the victim about the head; drove to a secluded area then committed the rape in the back seat of the car; injured the victim's breasts; took her money; ineffectively blindfolded her, and bragged of his other rapes and his enjoyment of the crime.

Moore points out ten dissimilarities between the two rapes, including: M.B.—taken from a convenience store in the car of her attacker, who openly displayed a knife, who engaged in sodomy and cunnilingus, burned her with a cigarette, threatened to cut her breasts or to kill her, and said nothing about being afflicted with AIDS; D.H.—taken from a tavern in her own car by an attacker who said he had a knife but never displayed it, who committed neither sodomy nor cunnilingus, did not burn her with a cigarette, or threaten to cut or kill her, but did say he had AIDS.

These facts make our *Penley* inquiry a close question. Aware that sex crimes contain "inherent similarities," *Penley, supra* at 810, yet realizing that even strikingly similar crimes need not be perfectly identi-

cal, we would conclude that D.H.'s testimony was inadmissible under the *Penley* standard. *Cf. Sizemore v. State* (1988), Ind., 530 N.E.2d 736, 738 ("carefully prepared strips of towel" to bind victims satisfied *Penley*).

However, we need not make that decision. Even if admission of D.H.'s testimony was error under *Penley*, the error did not affect the verdict and was therefore harmless. Substantial independent evidence supported the jury's verdict. *See Staton v. State* (1988), Ind., 524 N.E.2d 6, 9. Given that M.B. and Ullom unequivocally identified Moore at trial, and given the quality and quantity of other inculpatory evidence, we are satisfied beyond a reasonable doubt that D.H.'s testimony did not contribute to the verdict. Moreover, although neither party has discussed the point, we see no contemporaneous objection by Moore to admission of D.H.'s testimony. Thus, it could be said that Moore has waived the issue. *Akins v. State* (1981), Ind., 429 N.E.2d 232, 237, *reh'g denied.*

It is true, as Moore repeatedly argues, that both M.B. and Ullom initially selected from a photo array the same picture, not of Moore. In *Penley*, that the victim initially misidentified her attacker compelled the conclusion that admitting testimony of an extrinsic rape not strikingly similar required reversal despite unequivocal identification at trial. However, here both M.B. and Ullom stated when selecting the photo that it resembled the rapist, but was not him. Thus, it cannot be said that M.B. and Ullom misidentified their attacker. Therefore, D.H.'s testimony was not crucial, and reversible error cannot flow from its admission.

## SENTENCING

(2) Whether the sentence of 180 years is unreasonable and not supported by an adequate explanation?

Sentencing is within the discretion of the trial court. A sentence authorized by statute will not be revised unless it is "manifestly unreasonable," i.e., "no reasonable person could find such sentence appropriate to the particular offense and offender

for which such sentence was imposed." Appellate Rule 17(B).

The trial court's discretion in sentencing is regulated by I.C. 35–38–1–7.1.[8] In determining sentence, the trial judge must consider certain factors in mitigation or aggravation, and may consider others. When a presumptive sentence is imposed, the appellate court will presume compliance with I.C. 35–38–1–7.1. *Hammons v. State* (1986), Ind., 493 N.E.2d 1250, 1254, *reh'g denied*, 496 N.E.2d 1284.

■ However, when a trial court finds aggravating or mitigating circumstances, I.C. 35–38–1–3 requires a statement of reasons underlying the sentence imposed. The explanation cannot merely recite the statutory factors, but must relate in some detail the facts peculiar to the defendant and the crime—thereby assuring the sentence was fair and reasonable. *Page v. State* (1981), Ind., 424 N.E.2d 1021, 1023, *aff'd* (1982), Ind., 442 N.E.2d 977, *reh'g denied.*

■ An adequate explanation contains at least three elements: (1) a list of all the significant aggravating and mitigating factors, (2) a statement of the specific reason why each factor is aggravating or mitigating, and (3) an evaluation and balancing of the factors. *Robinson v. State* (1985), Ind., 477 N.E.2d 883. Only one aggravating factor is necessary to enhance a sentence. *Thorpe v. State* (1988), Ind., 524 N.E.2d 795. The same factors that support imposing enhanced sentences can support consecutive service of them. *Parrish v. State* (1987), Ind., 515 N.E.2d 516, 521. If an explanation is inadequate, the appellate court has a range of options: ordering an enhanced sentence reduced to the presumptive; ordering consecutive sentences changed to concurrent; remanding for a more detailed statement; or, examining the record for indications that the trial judge engaged in the required evaluative process. *Brown v. State* (1982), Ind., 442 N.E.2d 1109, 1118, *reh'g denied; Erby v. State* (1987), Ind., 511 N.E.2d 302, 304;

*Henderson v. State* (1986), Ind., 489 N.E.2d 68, 72.

■ Here, the trial judge listed five reasons for enhancing the sentences beyond the presumptive. The first three reasons are virtually identical to the three held inadequate in *Henderson, supra.* However, the statement also mentioned two valid aggravating factors—deliberately burning M.B. with a cigarette and the psychological injury inflicted on her. These reasons are not among the discretionary aggravating factors of I.C. 35–38–1–7.1(b). However, they may be considered mandatory factors under I.C. 35–38–1–7.1(a)(2), or unlisted discretionary factors under I.C. 35–38–1–7.1(d).

The trial judge specifically found no mitigating factors, and Moore advanced none. Thus, there was nothing to balance.

■ In running the sentences consecutively, the trial judge mentioned only "the Court's requirement not only to deal with rehabilitation but to detention." This statement by itself is insufficient to explain why the enhanced forty-five year sentences were transformed into a sentence of 180 years, because a forty-five year sentence would also deal with detention. However, the sentencing record contains the two valid aggravators. Therefore, the trial judge's sentencing statement is adequate. *Thorpe, supra; Parrish, supra.* We hold the sentence imposed not manifestly unreasonable. Moore committed a brutal crime; Judge Bradford imposed a harsh sentence.

## TESTIMONY THROUGH DEPOSITION

(3) Was it error to admit the testimony of Rick Grisel through deposition?

The trial judge granted the State's pretrial motion to read Grisel's deposition into evidence. Grisel is the state police investigator who examined the car allegedly used by Moore in the rape of M.B. His testimony was admitted via deposition because he was "unavailable"—on vacation in Las Ve-

---

**8.** At the time of sentencing in this case, the relevant provisions were App.Rule 2 and I.C. 35–38–1–7. The current provisions, App.Rule 17(B) and I.C. 35–38–1–7.1 do not differ from their predecessors in any way significant to this case.

gas. The deposition included cross-examination by Moore.

Grisel described his investigation of the car: he dusted for fingerprints, vacuumed for hairs, and took carpet samples. He found no prints. He sent the carpet samples and the vacuum filters to the police lab for analysis but didn't know the results of lab tests. He found no trace of semen, although M.B. had testified that she spat out semen.

The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

. . . .

(b) that the witness is outside the state, unless it appears that the absence of the witness was procured by the party offering the deposition. . . .

Trial Rule 32(A)(3)(b).

■ Admission of testimony through deposition is reviewed only for abuse of discretion. *Jarvis v. State* (1982), Ind., 441 N.E.2d 1, 7. To be admissible, the proponent must show that the witness is unavailable, and the testimony must show adequate indicia of reliability. *Coleman v. State* (1989), Ind., 546 N.E.2d 827, 829, *reh'g denied.*

Reliability can be established by showing the defendant had an opportunity to cross-examine the witness. *Iseton v. State* (1984), Ind.App., 472 N.E.2d 643, 649. Unavailability "can be implicit in the trial court's admission of the deposition, and the burden is on the appellant to prove that the error of judgment was clearly against logic and the natural inferences to be drawn from the record." *Id.*

■ Moore argues that Grisel was not "unavailable." His Vegas reservations were from January 11–15, but trial began on the 9th, and the first testimony came on the 10th, so Grisel could have testified in person. The State argues that the trial court acted within its discretion, and that Moore has not shown otherwise.

Reliability follows from Moore's cross-examination of Grisel. Unavailability is implicit in the trial court's admission of the deposition—"[t]he trial court had evidence before it to justify a ruling that the witness would be unavailable for trial. . . ." *Coleman, supra* at 830. In its pre-trial motion, the State asserted that Grisel's absence would begin on the 10th.

Although the testimony could be characterized as exculpatory, in that Grisel found neither fingerprints nor traces of semen, to deem it so crucial as to preclude admission through deposition exaggerates its value. In any event, the jury heard that evidence. Live testimony would have added little to Moore's benefit. The trial court did not abuse its discretion.

## DISCOVERY

(4) Whether the trial court abused its discretion by allowing into evidence items that the defense did not see before trial despite a mutual discovery order?

■ At trial, Moore objected to twenty-two exhibits probative of the occurrence of the rape or the rapist's identity. The exhibits were of a type inherent in rape cases—hair and body fluid samples of both victim and suspect, victim's pants tested for seminal fluid, etc. Moore did not request a continuance, but rather sought exclusion of the evidence.

Trial court decisions on admissibility of evidence are reviewed for abuse of discretion. *Kremer v. State* (1987), Ind., 514 N.E.2d 1068, 1073, *reh'g denied.* Indiana allows broad-reaching discovery in criminal cases if reciprocal. *State ex rel. Keller v. Criminal Court of Marion County* (1974), 262 Ind. 420, 317 N.E.2d 433. When "surprise" evidence appears at trial, the ordinary remedy is continuance, which is not favored in criminal trials, and can be had only upon a showing of good cause. *Jacobs v. State* (1982), Ind.App., 436 N.E.2d 1176, 1177. A defendant who fails to move for a continuance "will usually have waived any error, except where the State has blatantly and deliberately disregarded the court's order." *Butler v. State* (1978), 175 Ind.App. 409, 372 N.E.2d 190, 194.

A mutual discovery order was entered in this case. From the record, it appears that the State did not give Moore an itemized

list of its prospective exhibits, but rather sent the police and lab reports, expecting the defense to infer the existence of the tangible objects from the documents supplied. This is hardly blatant and deliberate disregard of the discovery order. Accordingly, we hold this issue waived by failure to request a continuance. If Moore believed the State was deliberately disregarding the discovery order, he would have been entitled to an order compelling compliance. *Butler, supra,* at 195. However, it is not commendable to sit idly by during pre-trial preparation and then expect to torpedo a major trial with this objection.

## ATTEMPTED CRIMINAL CONFINEMENT

(5) Whether the trial court erred in denying Moore's motion for directed verdict on the charge of attempted criminal confinement?

■ This charge depends on the testimony of Jeannine Ullom, the witness whose car window Moore struck with a knife. It also depends on that of M.B., who testified Moore told her that "he tried to get a girl right before [her] but she got away too fast."

Criminal confinement is the knowing or intentional confinement of another person without consent, or the removal of another person by fraud, enticement, force or threat of force from one place to another. I.C. 35–42–3–3. An attempt is engaging in conduct that constitutes a substantial step toward commission of a crime, acting with the same degree of culpability required to commit the crime. I.C. 35–41–5–1. What constitutes a "substantial step" is a question for the jury, to be decided on the particular facts and circumstances of each case. *Zickefoose v. State* (1979), 270 Ind. 618, 388 N.E.2d 507.

Judgment on the evidence, or directed verdict, is set out in Trial Rule 50. The motion can be granted "only if there is an absence of evidence on an essential element of the crime, or where the evidence is not in conflict and gives rise to inferences only in favor of the accused." *Russell v. State* (1982), Ind., 438 N.E.2d 741, 743.

Moore argues that his striking Ullom's window with a knife does not prove beyond a reasonable doubt that he intended to confine her or remove her from the area, and that "only by 'guessing' from the events revolving around [M.B.] can one come up with attempted criminal confinement of Jeannine Ullom."

However, there is a reasonable inference, adduced from M.B.'s testimony on Moore's stated attempt to "get" a different girl, that Moore intended to confine Ullom. The charge was properly reserved for the jury. Denial of the motion was within the sound discretion of the trial court.

## ASSISTANCE OF COUNSEL

(6) Whether Moore was denied effective assistance of counsel because counsel misunderstood the trial court's ruling on the State's motion *in limine* # 3?

■ In motion # 3, the State sought a bar against mention of rape charges pending against any person other than Moore. The motion was denied. However, in Moore's motion to correct errors, it was argued that the trial court erred in *granting* the motion.

The parties cite the well-known standard of *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, requiring both deficient performance and prejudice therefrom. We need not address the deficiency prong, because Moore has not shown prejudice.

Moore's brief explains that when his case went to trial, three other rape cases were pending in the county. Apparently, Moore wanted to use that fact to raise a doubt on the identity issue. However, Moore's brief fails to argue that any of the other accused rapists resemble him. Thus, we see no prejudice from failure to proffer these witnesses due to counsel's ostensible misunderstanding of the trial court's ruling.

## SUFFICIENCY OF THE EVIDENCE

(7) Whether the evidence was sufficient to establish each and every element of the crimes charged?

Our review of insufficient evidence claims encompasses neither reweighing the evidence nor judging the credibility of the witnesses. Rather, we consider only the evidence most favorable to the verdict, and any inferences reasonably drawn therefrom. *McClaskey v. State* (1989), Ind., 540 N.E.2d 41. We will affirm a verdict supported by substantial evidence of probative value. *Id.*

In rape cases, conviction can be had upon the uncorroborated testimony of the victim. *Heaton v. State* (1985), Ind., 483 N.E.2d 58. The same holds for criminal deviate conduct and confinement. *Brown v. State* (1988), Ind., 525 N.E.2d 294; *Henley v. State* (1988), Ind., 522 N.E.2d 376. Thus, M.B.'s testimony alone sufficed to convict on every count except the attempted confinement of Ullom, whose testimony together with M.B.'s was sufficient on that count. In addition to their identification of Moore, the State presented evidence showing that the rapist's blood factors were uncommon—about 1% in the population—and consistent with Moore's. Also, Moore's statements to the police indicated his knowledge of a distinctive question that the rapist had asked M.B.

### LENGTH OF JURY DAY

(8) Whether the trial judge erred by having the jury work continuously for seventeen hours?

On the final trial day, the jury heard evidence, closing statements, and final instructions. This took until 8:08 p.m., after which the jury went to dinner and then deliberated, returning a verdict at 2:05 a.m.

The length of time allowed for jury deliberation is within the trial court's discretion. *Fox v. State* (1984), Ind., 457 N.E.2d 1088, 1091. A defendant complaining on this ground must show prejudice as well as abuse of discretion. *King v. State* (1988), Ind., 531 N.E.2d 1154, 1161.

Moore has waived this issue by failing to object at trial. His complaint appears based on an unfavorable result, rather than on a bona-fide concern for the jury's ability to function with mental acuity after a long day.

AFFIRMED.

CONOVER and SULLIVAN, JJ., concur.