Debra COLE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 58A04–0207–CR–311.

Court of Appeals of Indiana.

July 2, 2003.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Debra Cole appeals her convictions for a Knowing Failure to Deposit Public Funds,[1] a class B felony, and Obstruction of Justice,[2] a class D felony. Cole raises three main contentions: (1) the penalty for a knowing failure to deposit public funds violates Article I, Section 16 of the Indiana Constitution because it is not proportioned to the offense; (2) the trial court violated Article I, Section 19 of the Indiana Constitution when it instructed the jury it was not to disregard the law for any reason; and (3) the trial court erred in requiring the jury to continue deliberating after it requested release for the evening. We conclude that the penalty for a knowing failure to deposit public funds does not violate the Indiana Constitution's proportionality requirement. Determining that the trial court committed no error in instructing the jury on its rights and obligations or in allowing the jury to continue deliberating or to be sequestered, we affirm.

### FACTS

The facts most favorable to the judgment show that the Ohio County Convention, Tourism, and Visitor's Commission ("Tourism Bureau") is a seven-member board responsible for marketing and promoting tourism in Ohio County and the town of Rising Sun. The Tourism Bureau's primary source of funds is the innkeeper's tax and the riverboat boarding tax. Cole was the Tourism Bureau's treasurer, and she controlled the check ledger and was responsible for handling and depositing the Tourism Bureau's funds.

In early 1999, the Tourism Bureau began selling T-shirts to help promote local attractions and as a supplemental source of funding. Cole had the responsibility of depositing the money from the T-shirt sales. Financial documentation showed that, beginning the first week that T-shirts were sold, Cole began substituting checks for the T-shirt sale cash in the records. A State Board of Accounts audit revealed that although the Tourism Bureau's financial statements would agree with the check register, neither would agree with the composition of the deposits made. Income

1. Ind.Code § 5–13–14–3

2. Ind.Code § 35–44–3–4.

from the innkeeper's tax and incoming checks were under-reported in the financial records in the amount of the T-shirt sales so that it would appear that the T-shirt sale cash was being deposited when it in fact was not. From March to December 1999, Cole failed to deposit $35,305 in T-shirt sale cash receipts.

During the audit, Cole on several occasions indicated that she did not have or could not locate documentation that the auditor was requesting. When police executed a search warrant for Cole's house, Cole told them that she had no paperwork in her house relating to the Tourism Bureau beyond a few pieces of correspondence. Behind a mattress, police found a storage box containing numerous documents relating to the Tourism Bureau, including documents which Cole had told the auditor that she did not have or could not locate.

A grand jury indicted Cole on one count of obstruction of justice, one count of a knowing failure to deposit public funds (regarding the period from March to December 1999), two other counts of a knowing failure to deposit public funds (relating to other periods), three counts of theft, and five counts of forgery. Cole had no objection to the trial court's preliminary instructions, which included an instruction on the jury's right to determine the law and the facts. Cole tendered a final instruction on the jury's right to determine the law and the facts. The trial court did not give this instruction, and Cole did not object to the instruction that the court did give on this matter.

The jury began deliberating around 2:30 p.m. At 11:15 p.m. the jury sent the trial court a note indicating it had reached verdicts on seven counts but not on the other five counts and requested release for the evening. The court informed the jury that it could not release the jurors to go to

their homes but could sequester them or they could continue deliberating. The foreman stated that the jury had not discussed whether they wanted to continue deliberating under those conditions. The trial court had the jury resume deliberations, stating that any further inquiries should be provided to the bailiff. Cole had no objection to allowing the jury to continue deliberating.

At 2:20 a.m. the jury returned its verdict on all twelve counts. The jury found Cole guilty of obstruction of justice and on the first count of the knowing failure to deposit public funds but acquitted Cole on the remaining ten counts. The trial court sentenced Cole to ten years, with four suspended, on the conviction for failure to deposit public funds and to a concurrent sentence of one and a half years on the obstruction conviction. Cole now appeals.

## DISCUSSION AND DECISION

### I. Penalty Proportionality

Cole first contends that the penalty for the knowing failure to deposit public funds violates the proportionality clause of Article I, Section 16 of the Indiana Constitution. Whether a statute is constitutional on its face is a question of law. *State v. Moss–Dwyer*, 686 N.E.2d 109, 110 (Ind.1997). Article I, Section 16 requires that "[a]ll penalties shall be proportioned to the nature of the offense." "'[T]he nature and extent of penal sanctions are primarily legislative considerations.'" *Moss–Dwyer*, 686 N.E.2d at 111 (alteration added) (quoting *Person v. State*, 661 N.E.2d 587, 593 (Ind.Ct.App.1996)).

In reviewing the legislature's penalty assignments, Indiana courts are deferential to the legislature's decision:

Our separation of powers doctrine requires we take a highly restrained approach when reviewing legislative

prescriptions of punishments. While legislative decisions do not completely escape review, "judicial review of a legislatively sanctioned penalty is very deferential." We will not disturb the legislative determination of the appropriate penalty for criminal behavior except upon a·showing of clear constitutional infirmity.... "When considering the constitutionality of a statute, we begin with the presumption of constitutional validity, and therefore the party challenging the statute labors under a heavy burden to show that the statute is unconstitutional." A court is not at liberty to set aside the legislative determination as to the appropriate penalty merely because it seems too severe.

*Id.* at 111–12 (some citations omitted) (quoting *Person,* 661 N.E.2d at 592, 593). A sentence may be unconstitutional by reason of its length, if it is so severe and entirely out of proportion to the gravity of offense committed as " 'to shock public sentiment and violate the judgment of a reasonable people.' " *Teer v. State,* 738 N.E.2d 283, 290 (Ind.Ct.App.2000) (quoting *Pritscher v. State,* 675 N.E.2d 727, 731 (Ind.Ct.App.1996)), *trans. denied.*

Indiana Code section 5–13–14–3 provides in part that a "public official who knowingly fails to deposit public funds, or knowingly deposits or draws any check or negotiable order of withdrawal against the funds except in the manner prescribed in this article, commits a class B felony." The presumptive sentence for a class B felony is ten years, with not more than ten years added for aggravating circumstances and not more than four years subtracted for mitigating circumstances. Ind.Code § 35–50–2–5. Cole raises a number of arguments challenging the proportionality of the penalty for the knowing failure to deposit public funds. She compares the penalty to other class B felonies, which she contends, are more serious crimes than the knowing failure to deposit public funds. Cole also argues that the penalty is disproportional to the offense because the crime only requires proof of a "knowing" mens rea, whereas the crime of theft, a class C felony, requires proof of a "knowing or intentional" mens rea. Cole additionally complains that the penalty remains a class B felony irrespective of whether small or large amounts of money are involved and thus is disproportional to the offense.

■ We find none of Cole's arguments persuasive. The test is whether the penalty would "shock public sentiment" and "violate the judgment of a reasonable people." *See Teer,* 738 N.E.2d at 290. Classifying a knowing failure to deposit public funds as a class B felony does not shock public sentiment or violate the judgment of a reasonable people. First, a public official owes an undivided duty to the public whom he serves. *Ind. State Ethics Comm'n v. Nelson,* 656 N.E.2d 1172, 1175 (Ind.Ct.App.1995), *trans. denied.* The instant offense harms all the members of the public served by the public official, not just an individual property owner. Second, because the crime is not committed against an individual who has an interest in protecting and preserving his own property, the crime is more difficult to detect and may justify a stricter penalty for the sake of deterrence. It does not shock the public conscience to penalize more harshly those harms that may be more pervasive yet difficult to detect. Therefore, we reject Cole's argument that Indiana Code section 5–13–14–3 violates Article I, Section 16 of the Indiana Constitution.

## II. The Right to Ignore the·Law

■ Cole next argues that the trial court committed fundamental error in failing to instruct the jury that it had a consti-

tutional right to disregard the law.[3] At trial, she proposed the following instruction on the jury's rights and obligations:

It is the duty of the Court to instruct you in writing at this time concerning the matters of law which are necessary for your information in giving your verdict.

In discharging this duty, the Court has no right to assume, and does not assume, that any fact or facts have been established or not established, it being your exclusive right and duty under the Constitution of the State of Indiana to determine from all the evidence what has and what has not been proved.

As a matter of fact, the Court now instructs you, in this, a criminal case, you are the exclusive judges of both the law and the facts. The instructions of the Court are advisory only, and you may disregard them entirely and determine what the law is for yourselves; and if you find that any instruction does not, or that any instructions do not state the law correctly, it is your province and your duty to decide the case according to the law as you shall find it to be.

If, however, you shall have no well-defined opinion as to what the law is relating to any particular matter or matters at issue in this case, then, in determining the law, you should give the instructions of the Court respectful consideration.

Appellant's App. p. 1831. The trial court refused to give Cole's tendered instruction.

In reviewing a trial court's decision to give or refuse a tendered jury instruction, this court considers whether the instruction correctly states the law, is supported by the evidence in the record, and is covered in substance by other instructions. *Whitney v. State*, 750 N.E.2d 342, 344 (Ind.2001). The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion. *Id.* The trial court gave the jury the following instruction, which is a verbatim restatement of Indiana Pattern Jury Instruction 1.03:

Under the Constitution of Indiana, the jury is given the right to decide both the law and the facts. In fulfilling this duty you are to apply the law as you actually find it and you are not to disregard it for any reason. The instructions of the Court are your best source in determining what the law is.

Appellant's App. p. 1042. Cole did not object to this instruction.

Cole's attorney relies heavily on a law review article, authored by Justice Rucker of the Supreme Court of Indiana, arguing that Article I, Section 19 of the Indiana Constitution[4] allows a jury to refuse to enforce the harshness of the law when justice requires. In that article, Justice Rucker concluded in part that "an instruction telling the jury that the constitution intentionally allows them latitude to 'refuse to enforce the law's harshness when justice so requires' would be consistent with the intent of the framers and give life to what is now a dead letter provision." Honorable Robert D. Rucker, *The Right to*

---

**3.** In her appellate brief, Cole raises two separate issues concerning the jury's "rights and obligations under the Indiana Constitution." Appellant's Br. p. 23. She complains that the trial court committed two instructional errors: (1) by failing to give her tendered instruction which stated in part that the jurors "may determine what the law is for themselves"; and (2) by giving an instruction stating that the jury was "not to disregard [the law] for any reason." Our resolution of the second issue necessarily resolves the first.

**4.** Article I, Section 19 provides: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

*Ignore the Law: Constitutional Entitlement Versus Judicial Interpretation,* 33 Val. U.L.Rev. 449, 481 (1999) (footnote omitted). After the briefs were filed in this appeal, our supreme court issued its latest opinion rejecting the notion that a jury has a right to disregard the law. According to the May 30, 2003 unanimous opinion authored by Justice Rucker: "This Court's latest pronouncement on the subject is correct: '[I]t is improper for a court to instruct a jury that [it has] a right to disregard the law. Notwithstanding Article 1, Section 19 of the Indiana Constitution, a jury has no more right to ignore the law than it has to ignore the facts in a case.'" *Holden v. State,* 788 N.E.2d 1253, 1254 (Ind.2003) (first alteration in original) (quoting *Bivins v. State,* 642 N.E.2d 928, 946 (Ind.1994)).

The trial court did not err in refusing to give Cole's tendered instruction. Cole's attempt to define the jury's rights and obligations was covered by the trial court's own instruction. In turn, the trial court's instruction stating in part that the jury had no right to disregard the law for any reason was a correct statement of the law.

### III. Jury Deliberations

■ Cole's final contention is that the trial court erred in refusing to release the jury for the evening upon its request. The case went to the jury around 2:30 p.m. Around 11:30 p.m. the trial court received a note from the jury that read as follows:

We have reached verdicts on 1, 3, 4, 5, 6, 7, 8; hung on 9, 10, 11, 12, 2. We, the jury, request release for the evening. Permission, please. Nancy requires to remove her contacts and medicine.

Tr. p. 1610. The trial court met with the parties and indicated his intent to call the jury into the courtroom. He told the parties that he would inform the jurors that they could not be released to go home but would have to be sequestered or continue deliberating. Cole approved of the trial court's plan. Tr. p. 1611.

The trial court carried out its plan by giving the jurors the option to continue deliberating or to be sequestered for the evening. When asked if the jury wanted to continue deliberating, the foreman responded that the jury "[hadn't] discussed it under th[o]se conditions." Tr. p. 1612. The trial court then had the jury return to the jury room to continue deliberations, telling them that any "further inquiry" should be provided to the bailiff. Tr. p. 1613. At 2:20 a.m., the jury informed the court that it had completed its deliberations of all counts.

The record shows that Cole never objected to the trial court's decision to allow the jury to continue deliberating. By failing to object at trial, Cole has waived the issue for review. As this court noted in *Moore v. State,* when a defendant raises no objection to the trial court, his complaint on appeal "appears based on an unfavorable result, rather than on a bone-fide concern for the jury's ability to function with mental acuity after a long day." 569 N.E.2d 695, 702 (Ind.Ct.App.1991), *trans. denied.* We held that Moore had waived his claim that the jury should not have been allowed to deliberate for seventeen continuous hours because he raised no such objection at trial. *Id.* Likewise, Cole has waived any such claim here.

■ Had Cole objected to the trial court's plan, the trial court would have committed no error in overruling her objection. We first note that the length of time allowed for jury deliberation is a matter within the trial court's sound discretion. *Farrell v. State,* 622 N.E.2d 488, 492 (Ind.1993). The decision is left to the trial court's discretion because it is in the best position to assess the fatigue and state of mind of the jurors and is thus in a better

position to weigh the advantages and disadvantages of an adjournment. *Id.* In the instant case, twelve hours was not an unreasonable length of time to allow the jury to deliberate. *See Peck v. State,* 563 N.E.2d 554, 559 (Ind.1990) (upholding conviction where jury had been in court since 9:30 a.m., did not begin deliberating until 9:30 p.m., and did not complete its deliberations until approximately 1:30 a.m. the following morning); *Moore,* 569 N.E.2d at 702 (upholding conviction where the jury worked continuously for seventeen hours and did not finish deliberating until 2:05 a.m.). The trial court committed no error in giving the jury the option to continue deliberating or to be sequestered.

### CONCLUSION

In conclusion, Cole's convictions stand. First, the penalty for a knowing failure to deposit public funds does not violate the Indiana Constitution's requirement that a penalty be proportioned to the nature of the crime. Second, the trial court committed no error in instructing the jury that it could not disregard the law for any reason. Finally, Cole waived any claim that the trial court erred in allowing the jury to continue deliberating once it requested release for the evening. If Cole had objected, the trial court would have committed no error in overruling her objection.

Judgment affirmed.

SULLIVAN and DARDEN, JJ., concur.