William C. FOREMAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0606–CR–470.

Court of Appeals of Indiana.

April 30, 2007.

Rehearing Denied June 14, 2007.

John (Jack) F. Crawford, Crawford & Devane, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

In this interlocutory appeal, William C. Foreman appeals the trial court's order denying his motion to dismiss. Foreman presents the following issue of first impression: Does the penalty for Indiana Code Ann. § 4–30–14–4 (West 2002)-disclosure of confidential information relating to the lottery, a class A felony-violate article 1, section 16 of the Indiana Constitution?

We affirm.

On November 8, 2004, the State charged Foreman with disclosure of confidential information relating to the lottery, a class A felony and aiding in theft as a class C felony based on the following allegations contained in the probable cause affidavit: [1]

> William C. Foreman ..., while employed by the Hoosier Lottery as a Security Officer, did disclose confidential information to Daniel Foltz and Chad Adkins of Shelbyville, Indiana in violation of I.C. 4–30–14–4. The disclosed confidential information allowed Foltz and Adkins to travel to Cross Plains, Indiana and purchase a $1,000,000.00 winning lottery ticket.
>
> On September 7, 2004, Daniel Foltz filed a claim for the $1,000,000.00 at the Hoosier Lottery Headquarters located at 201 South Capit[o]l, Suite 1100, Indianapolis, IN. On September 8, 2004, Chad Adkins came to Indianapolis and made a claim on the same winnings as a co-winner with Foltz. Both Foltz and Adkins were awarded $25,000.00 a year for twenty years pursuant to the rules of the Lottery game. To date both have received $25,000.00. I have reason to believe Foreman disclosed the confidential information and conspired to steal from the Lottery for the reasons stated herein:
>
> 1. On May 13, 2004[,] the "$2,000,000.00 Bonus Spectacular" lotto game was compromised when a Hoosier Lottery investigator, Mat[t]hew Hollcraft, obtained a ticket reconstruction from the ticket printer that revealed to Hollcraft the location where all the grand prize winning tickets had been delivered. Three

---

1. Because this case stems from a motion to dismiss and no evidence has been presented, the parties agree that any facts surrounding the alleged crimes that would be pertinent for this appeal are contained in the probable cause affidavit.

people at the lottery could access this information—that is the report of the ticket reconstruction and location—and they were William Foreman (a Security Officer for the Hoosier Lottery), Matthew Hollcraft and Pete Byrne, Chief of Security for the lottery.

2. The winning ticket was located at Otter's Grocery in Cross Plains[,] Indiana. Ragina Warner, clerk at Otter's Grocery, remembers that in May of 2004 a subject she identified from a photo spread as Daniel Foltz came in and purchased a few $20.00 tickets from the game known as the "$2,000,000.00 Bonus Spectacular" tickets [sic] and the [sic] left the grocery store. Shortly thereafter, he returned and purchased the rest of the tickets in that grocery store for the "$2,000,000.00 Bonus Spectacular." The cost of buying the remaining tickets was approximately $640. The clerk stated that she had never seen someone buy that many $20.00 tickets.

3. William Foreman is a close friend of Chad Adkins. When we interviewed Adkins at his home o[n] October 26, 2004 he was in possession of Foreman's car. Adkins admits that he knows Foreman and that they talk almost daily.

4. Based upon the foregoing circumstances, I believe that Foltz and Adkins learned the winning ticket was located in Otter's Market because of information divulged to them by William Foreman.

*Appellant's Appendix at 18.*

In November 2005, Foreman filed a motion to dismiss, challenging the constitutionality of I.C. § 4–30–14–4. Specifically, Foreman alleged that the statute violated the proportionality provision of article 1, section 16 of the Indiana Constitution.[2] In February 2006, the trial court held a hearing on Foreman's motion and thereafter issued an order denying his motion to dismiss, which provides, in relevant part:

4. The penalty for violating Indiana Code § 4–30–14–4, a Class A felony, is proportionate to the nature of the offense in accordance with Art. I, § 16 of the Indiana Constitution. A violation of Ind.Code § 4–30–14–4 has the power to undermine the public trust in the integrity of the Hoosier Lottery, a significant source of revenue for the citizens of Indiana. Undermining the public trust in the integrity of the Hoosier Lottery could result in deterring lottery players thereby decreasing this significant source of revenue. A seemingly extreme penalty is an appropriate deterrent.

5. A penalty is disproportional under Art. I § 16 of the Indiana Constitution "only when a criminal penalty is not graduated and proportioned to the nature of an offense." *Conner v. State,* 626 N.E.2d 803, 806 (Ind.1993) citing *Hollars v. State,* 259 Ind. 229, 286 N.E.2d 166, 170 (1972). The court finds that the penalty of Class A felony is proportioned to the nature of the offense alleged in the instant case and finds no reason to upset the determination of the

**2.** Foreman also alleged that I.C. § 4–30–14–4 violated: (1) the Equal Protection Clause of the 14th Amendment of the United States Constitution; (2) the privileges and immunity clause of article 1, section 23 of the Indiana Constitution; and (3) the prohibition against cruel and unusual punishment under the 8th Amendment of the United States Constitution and article 1, section 16 of the Indiana Constitution. On appeal, however, Foreman makes no argument regarding these constitutional provisions.

legislature codified in Ind.Code § 4–30–14–4.

*Id.* at 102. Thereafter, upon Foreman's request, the trial court certified the order for interlocutory appeal. We accepted jurisdiction of the interlocutory appeal pursuant to Indiana Appellate Rule 14(B).

Foreman argues that the penalty for I.C. § 4–30–14–4—disclosure of confidential information relating to the lottery, a class A felony—violates article 1, section 16 of the Indiana Constitution. Article 1, section 16 provides, in relevant part, "All penalties shall be proportioned to the nature of the offense." The question of whether a statute is constitutional on its face is a question of law, and we review such questions de novo. *State v. Moss–Dwyer*, 686 N.E.2d 109 (Ind.1997). "When considering the constitutionality of a statute, we begin with the presumption of constitutional validity, and therefore the party challenging the statute labors under a heavy burden to show that the statute is unconstitutional." *Id.* at 112.

The nature and extent of penal sanctions is primarily a legislative consideration, and our review of legislative prescriptions of punishment is "highly restrained" and "very deferential." *Id.* at 111. We will not disturb the legislature's determination of the appropriate penalty unless there is a showing of clear constitutional infirmity. *State v. Moss–Dwyer*, 686 N.E.2d 109. Additionally, we are not at liberty to set aside a legislatively sanctioned penalty merely because it seems too severe. *Id.*

Our Indiana Supreme Court has explained that the analysis is "straightforward" where the statutory punishment of a single crime is alleged to be constitutionally disproportionate. *Id.* at 111. A criminal penalty violates the proportionality clause "only when a criminal penalty is not graduated and proportioned to the nature of the offense." *Conner v. State*, 626 N.E.2d 803, 806 (Ind.1993) (internal quotes and citation omitted). Stated differently, a legislatively determined penalty will be deemed unconstitutional by reason of its length only if it is "so severe and entirely out of proportion to the gravity of the offense committed as to shock public sentiment and violate the judgment of reasonable people." *Teer v. State*, 738 N.E.2d 283, 290 (Ind.Ct.App.2000) (internal quotations and citations omitted), *trans. denied.*

Foreman was charged with disclosure of confidential information relating to the lottery, a class A felony, which provides that "[a] person who, with intent to defraud or with intent to provide a financial or other advantage to the person or another person, knowingly discloses information relating to the lottery that is designated as confidential under this article commits a Class A felony." I.C. § 4–30–14–4. At the time Foreman is alleged to have committed this offense, the penalty for a class A felony consisted of a presumptive sentence of thirty years, with a minimum sentence of twenty years and maximum sentence of fifty years.[3] *See* Ind.Code Ann. § 35–50–2–4 (West 2004).

Before we delve into the parties' arguments regarding the constitutionality of I.C. § 4–30–14–4, we note:

**3.** After the date Foreman was alleged to have committed the offense, the Legislature amended Indiana's sentencing statutes to provide for "advisory sentences" rather than "presumptive sentences." *See* Pub.L. No. 71–2005, § 5 (codified at I.C. § 35–50–2–1.3) (West, PREMISE through 2006 2nd Regular Sess.). The new scheme does not apply, however, to cases in which the offense was committed before the effective date of the amended statute, i.e., April 25, 2005. *Creekmore v. State*, 853 N.E.2d 523 (Ind.Ct.App.2006), *trans. denied; but see White v. State*, 849 N.E.2d 735 (Ind.Ct.App.2006), *trans. denied.*

As a matter of perspective, historically, the State of Indiana has prohibited gambling. However, in 1988, the Indiana Constitution was amended to delete the general prohibition against lotteries and to authorize lotteries conducted by the State Lottery Commission. The General Assembly then proceeded to authorize horse race gambling and, in 1993, approved riverboat casinos as a lawful gambling activity. However, aside from these exceptions, gambling continues to be strictly prohibited by Indiana's anti-gambling laws. Thus, in our state, while gambling is generally prohibited, certain well-regulated exceptions have been created. It is against this background that we must interpret the statutes at issue before us.

*Schrenger v. Caesars Indiana,* 825 N.E.2d 879, 882–83 (Ind.Ct.App.2005) (citations and internal quotations omitted), *trans. denied.* With this in mind, we review proportionality of the penalty contained in the disclosure of confidential information relating to the lottery statute.

Foreman argues that I.C. § 4–30–14–4 violates the proportionality provision of article 1, section 16 of the Indiana Constitution because the twenty- to fifty-year penalty range for the commission of this class A felony is not graduated and proportional to the nature of the offense of disclosing confidential information relating to the lottery. Foreman contends the nature of the offense of disclosing confidential information relating to the lottery is not as serious as other class A felony offenses, which he asserts pose a threat to "public safety" and fall into the following general categories: "1) crimes of violence; 2) crimes against children; 3) crimes against public health; and 4) crimes involving drug trafficking." *Appellant's Brief* at 7. Foreman argues that the offense of disclosure of confidential information relating to the lottery is unlike these "public safety" crimes and is

more similar to "economic" crimes or "property" crimes like theft or fraud, which carry a lesser penalty because they generally are classified as class C or D felonies. *Id.* at 10. Foreman also argues that the disclosure of confidential information relating to the lottery statute is unconstitutional because the potential fifty-year maximum penalty for disclosure of confidential information relating to the lottery is higher than the one-year maximum penalty for a similar offense for disclosure of confidential information contained in Indiana Code Ann. § 5–14–3–10(a) (West 2002), which provides, "A public employee, a public official, or an employee or officer of a contractor or subcontractor of a public agency, except as provided by IC 4–15–10, who knowingly or intentionally discloses information classified as confidential by state statute commits a Class A misdemeanor." Foreman contends that punishing someone for disclosing confidential lottery information fifty times more severely than he could be punished for disclosing confidential information while working for a different State agency is out of proportion to the nature of the offense.

On the other hand, the State argues that Foreman has failed to overcome his burden of showing that the statute is unconstitutional and the presumption of constitutional validity that clothes the statute. The State acknowledges that the disclosure of confidential information relating to the lottery statute does not "fit neatly" into the categories of class A felony offenses as set forth by Foreman but argues that the ability to pigeon-hole the offense into one of these categories is of no moment because the legislature has the authority to determine different penalties for different types of offenses. *Appellee's Brief* at 9. The State asserts that the twenty- to fifty-year penalty is proportionate to the gravity of the offense and does

not "shock the public sentiment" because the offense of disclosing confidential information relating to the lottery involves multiple victims—potentially all citizens of the state, including those that play the lottery and those that receive a benefit from lottery profits—and constitutes a violation of public trust. The State explains that the multiple victims stem from the fact that the revenue from the lottery is used to help contribute to the state teacher's retirement fund, the police and fire pension relief fund, and the Build Indiana Fund, which helps, among other things, to lower license plate taxes and to fund tuition support, school technology, and local capital and construction projects.[4] *See id.* at 11; *see also* http://www.in.gov/hoosierlot tery/where_money_goes/profitdistribution.asp; http://www.in.gov/sba/budget /gaming/LGS_Distribution_Report_2006.pdf (last visited April 11, 2007). The State also contends that the legislature's classification of disclosure of confidential information relating to the lottery as a class A felony was a means of deterrence against any violation of this public trust that would have consequences on the multiple victims such as "the retired police officer, teacher, or firefighter, to the school children who benefit from the spread of the lottery's wealth." *Appellee's Brief* at 13.

We agree with the State that the statute is not disproportionate and find *Cole v. State,* 790 N.E.2d 1049 (Ind.Ct.App.2003), *trans. denied,* and *Balls v. State,* 725 N.E.2d 450 (Ind.Ct.App.2000), *trans. denied,* which involved challenges to the proportionality of statutes for offenses involv-

ing theft that affected the public, to be instructive. In those cases, we upheld the constitutionality of the challenged statutes and found no violations of the Indiana Constitution's proportionality provision where the legislature assigned a more severe penalty for an offense that affected or victimized the public than one that did not.

For example, in *Cole v. State,* the defendant, who was the treasurer of a tourism board, challenged the proportionality of the penalty for her conviction of knowing failure to deposit public funds, which the legislature had classified as a class B felony.[5] *See* Ind.Code Ann. § 5–13–14–3 (West, PREMISE through 2006 2nd Regular Sess.). In challenging the statute on appeal, the defendant compared the penalty to other class B felony offenses and argued that those offenses were more serious crimes than the knowing failure to deposit public funds. *Cole v. State,* 790 N.E.2d 1049. The defendant also argued that the penalty was disproportionate to the offense when compared to the crime of theft as a class C felony. *Id.* Finally, the defendant complained that the penalty was disproportionate to the offense because it remained a class B felony irrespective of whether small or large amounts of money were involved. *Id.* We did not find the defendant's arguments persuasive and, instead, held that the legislature's classification of a knowing failure to deposit public funds as a class B felony did not shock public sentiment or violate the judgment of reasonable people. *Id.* We found that the legislature's stricter penalty was justified for the sake of deterrence because the

---

4. For example, the Hoosier Lottery's website indicates that for 2006, it had $218 million in profits, from which it contributed $30 million to the Indiana State Teachers' Retirement Fund, $30 million to the Police and Fire Pension Relief Fund, and the remainder to the Build Indiana Fund. *See* http://www.in.gov/ hoosierlottery/where_mon-
ey goes/profitdistribution.asp; http://

www.in.gov/hoosierlottery/where_money_ goes/FY06AnnualReport.pdf (last visited April 11, 2007).

5. At the time, the penalty for a class B felony consisted of a presumptive sentence of ten years, with a minimum sentence of six years and maximum sentence of twenty years. *See* I.C. § 35–50–2–5.

offense harmed all members of the public served and because the crime at issue was more difficult to detect due to the fact that it was not committed against an individual who had an interest in protecting his own property. *Id.*

In *Balls v. State,* the defendant challenged the proportionality of the penalty for his conviction for welfare fraud involving the theft of public assistance totaling $8,000, which the legislature had classified as a class C felony.[6] *Balls v. State,* 725 N.E.2d 450. The defendant argued that the welfare fraud statute provided for a disproportionate penalty in comparison to the penalty for theft of property totaling $8,000, which was classified as a class D felony. *Id.* We held that "the Legislature is at liberty to punish more severely theft of public assistance than theft of other kinds of property or currency" and that the more severe penalty for theft of public assistance such as food stamps as compared to theft of other property or currency did not render the defendant's sentence disproportionate to the crime he committed. *Id.* at 453.

Similarly, in the instant case, we conclude the legislature's classification of disclosure of confidential information relating to the lottery as a class A felony is not "so severe and entirely out of proportion to the gravity of the offense committed as to shock public sentiment and violate the judgment of reasonable people." *See Teer v. State,* 738 N.E.2d at 290. The disclosure of confidential information relating to the lottery statute is not merely an "economic" crime like theft. Instead, it involves the disclosure of confidential information most likely by an employee of the lottery commission—which is charged with maintaining the integrity and dignity of the lottery and the state, as well as the

welfare of its citizens—and involves an aspect of theft that has the potential to affect many citizens of this state. *See* I.C. Ann. § 4–30–5–3 (West 2002) (providing that the lottery shall be operated in a manner to "maximize revenues in a manner consistent with the dignity of the state and the welfare of its citizens"); *L.E. Services, Inc. v. State Lottery Comm'n of Indiana,* 646 N.E.2d 334 (Ind.Ct.App.1995) (noting that the lottery commission is "charged by statute to maintain the integrity and dignity of the Hoosier Lottery"), *trans. denied.*

As mentioned above, the lottery was established and the lottery statutes were enacted immediately following the amendment of the provision of the Indiana Constitution that had prohibited lotteries. *See Indiana Gaming Comm'n v. Moseley,* 643 N.E.2d 296 (Ind.1994). The lottery statutes reveal the legislature's intent to ensure that the state-run lottery be conducted in a manner that maintains the integrity and dignity of the state and its citizens and to promote and protect the integrity of and public confidence in the lottery. *See* I.C. § 4–30–1–2(6) (West 2002) (explaining that "it is the intent of the general assembly that . . . lottery game advertising and promotion shall be consistent with the dignity and integrity of the state"); I.C. § 4–30–5–3 (providing that "[t]he director shall operate the lottery to maximize revenues in a manner consistent with the dignity of the state and the welfare of its citizens"); I.C. § 4–30–5–4 (West 2002) (explaining that "to promote and protect the integrity of and public confidence in the lottery," a lottery division of security is responsible for lottery security matters); I.C. § 4–30–6–4 (West 2002) (providing that "[t]he division of security shall conduct investigations of vendors, retailers, and employees of the

---

6. The penalty for a class C felony consisted of a presumptive sentence of four years, with a minimum sentence of two years and maximum sentence of eight years. *See* I.C. § 35–50–2–6.

commission ... necessary to ensure the security and integrity of the operation of the lottery"); I.C. § 4–30–6–5 (West 2002) (providing that the Indiana State Police shall assist the lottery security division in "obtaining criminal history information relevant to investigations required for honest, secure, exemplary lottery operations").

Additionally, "the state lottery serves an important revenue-generating function that, in turn, benefits the public welfare." *American Legion Post No. 113 v. State,* 656 N.E.2d 1190, 1194 (Ind.Ct.App.1995), *trans. denied.* Specifically, I.C. § 4–30–1–1 (West 2002) provides: "The purpose of this article is to establish lottery games in Indiana that are the best available and that enable the people of Indiana to benefit from significant additional money for capital improvements." Indeed, we have previously recognized that "all Indiana citizens may reap a potential benefit from the revenue generating function served by state operated and regulated [lottery] activities." *American Legion Post No. 113 v. State,* 656 N.E.2d at 1194.

Finally, similar to the crime challenged in *Cole v. State,* the crime of disclosing confidential information relating to the lottery is or may be difficult to detect given the fact that it is not committed against an individual who has an interest in preserving his own property. *See Cole v. State,* 790 N.E.2d 1049. Thus, such a crime would "justify a stricter penalty for the sake of deterrence." *Id.* at 1053 (noting that "[i]t does not shock the public conscience to penalize more harshly those harms that may be more pervasive yet difficult to detect").

Here, the legislature classified the penalty for disclosure of confidential information relating to the lottery as a class A felony. Given the historical backdrop of when I.C. § 4–30–14–4 was enacted, the expressed intent of maintaining the integrity of the lottery, the potential effect the commission of the crime could have on citizens of this state, and the difficulty in detecting the crime, the legislature could have reasonably determined that a severe penalty was required for the offense of disclosing confidential lottery information. Furthermore, we are not free "to set aside the legislative determination as to the appropriate penalty merely because it seems too severe." *State v. Moss–Dwyer,* 686 N.E.2d at 112. In light of the presumption of constitutionality of statutes, and the heavy burden on the party asserting unconstitutionality, we are not convinced that the penalty for disclosure of confidential lottery information violates the proportionality provision of the Indiana Constitution. *See e.g., Cole v. State,* 790 N.E.2d 1049; *Balls v. State,* 725 N.E.2d 450; *see also Ponciano v. State,* 851 N.E.2d 305, 308 (Ind.Ct.App.2006) (holding that the elevated class C felony penalty for the offense of criminal recklessness by shooting a firearm from a vehicle into a place where people are likely to gather did "not shock public sentiment or violate the judgment of reasonable people" because, among other things, the use of a vehicle would make it less likely that the person would be identified, which, in turn, would make it more likely that the offense would be committed); *Laughner v. State,* 769 N.E.2d 1147 (Ind.Ct.App.2002) (upholding the proportionality of the penalty for attempted internet solicitation of a child where the legislature assigned a more severe penalty to serve as stronger deterrent for that crime than for the face-to-face solicitation of an actual child), *trans, denied, cert. denied,* 538 U.S. 1013, 123 S.Ct. 1929, 155 L.Ed.2d 849 (2003).

Judgment affirmed.

BAKER, C.J., and CRONE, J., concur.